UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RANDALL E. HEINE, | ) | Case No.: 1:10 CV 637 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| STREAMLINE FOODS INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | <u>ORDER</u> |

Randall E. Heine ("Plaintiff"), as an individual and as a trustee of the Randall E. Heine Revocable Trust, brought the above-captioned action against Defendants Streamline Foods, Inc. ("Streamline"), Brantley Capital Corporation ("BCC"), Brantley Management Company d/b/a Pinkas Management Company ("BMC"), and Robert Pinkas ("Pinkas") (collectively, "Defendants"), asserting various direct and derivative claims.

Currently pending before the court are: (1) BMC's Motion to Dismiss Count V of Plaintiff's First Amended Verified Complaint (ECF No. 30); (2) Pinkas's Motion to Dismiss (ECF No. 31); and (3) Streamline's Motion to Dismiss First Amended Complaint (ECF No. 32). For the following reasons, the court hereby denies BMC's Motion to Dismiss Count V of Plaintiff's First Amended Verified Complaint (ECF No. 30), grants in part and denies in part Pinkas's Motion to Dismiss (ECF No. 31), and grants in part and denies in part Streamline's Motion to Dismiss First Amended Complaint (ECF No. 32).

## I. FACTS AND PROCEDURAL HISTORY

In April 2001, Randall Heine began negotiating with Robert Pinkas for the sale of his company Total Foods Corporation. (First Am. Compl., ECF No. 29, ¶ 19.) Mr. Pinkas controls both Brantley Capital Corporation and Brantley Management Corporation. (*Id.* ¶ 8.) Streamline Foods, Inc. was formed to purchase the assets of Total Foods Corporation. (*Id.* ¶ 20.) On February 8, 2002, the sale was completed and a Stockholders' Agreement was executed. (*Id.* ¶¶ 20-21.)

In conjunction with the purchase of Total Foods' assets, Streamline entered into a pair of purchase agreements by which shares of the company's Series A Convertible Preferred Stock were sold to Brantley Capital Corporation and shares of the company's Series B Convertible Preferred Stock were sold to Randall Heine. (*Id.* ¶¶ 22-23.) Later in 2002, Plaintiff transferred his shares in Streamline to the Randall E. Heine Revocable Trust (hereinafter, "Trust"). (*Id.* ¶ 4.) Plaintiff currently serves as a trustee for this Trust. (*Id.*) Furthermore, Plaintiff and Streamline entered into a Stockholder Agreement by which BCC became the majority shareholder in Streamline, and Plaintiff became the minority shareholder. (*Id.* ¶ 13.)

Pursuant to the Stockholder Agreement, the corporate affairs of Streamline are managed by a five-member Board of Directors consisting of two representatives of the Series A stockholders, one representative of the Series B stockholders, one company representative, and one "Outside Director," nominated jointly by the company representative and the Series B representative. (*Id.* ¶ 24.) As of the filing of the Complaint, the Series A representatives are Robert Pinkas and Adam Bentkover, the Series B representative is Clark Bien, Don Hill is the company representative, and the fifth seat on the board, reserved for the "outside director," is currently vacant. (*Id.* ¶ 30.)

On December 9, 2009, Streamline paid $1.5 million to BMC. (*Id.* ¶ 43.) On January 11, 2010, Streamline's Board of Directors retroactively approved the $1.5 million disbursement and approved an additional $250,000 in quarterly payments to BMC. (*Id.* ¶ 50.)

Questioning the validity of these payments, Heine filed the current action against Defendants on March 26, 2010. (Compl., ECF No. 1.) Plaintiff filed a First Amended Complaint on October 19, 2010 (ECF No. 29). Plaintiff alleges the following counts: (1) breach of a February 8, 2002 Stockholders Agreement; (2) breach of fiduciary duties under Ohio law; (3) declaratory relief; (4) breach of fiduciary duties under Delaware law (in the alternative); (5) unjust enrichment; and (6) injunctive relief. (*Id.*)

## II. 12(b)(6) STANDARD

The court examines the legal sufficiency of the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993). The Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and recently in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) clarified the law regarding what the plaintiff must plead in order to survive a Rule 12(b)(6) motion.

When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the Complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the Complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above

the speculative level on the assumption that all the allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court in *Iqbal*, 129 S.Ct. at 1949, further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

The Sixth Circuit has held that a court may consider allegations contained in the complaint, as well as exhibits attached to or otherwise incorporated in the complaint, all without converting a Motion to Dismiss to a Motion for Summary Judgment. Fed. R. Civ. P. 10(c); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

### III. LAW AND ANALYSIS

Streamline seeks dismissal of all six causes of action brought by Plaintiff. (Streamline Mot. to Dismiss, ECF No. 32.) Pinkas incorporates all of Streamlines grounds for dismissal in his Motion. (Pinkas Mot. to Dismiss, ECF No. 31.) BMC seeks only dismissal of Count V, the unjust enrichment claim. (BMC Mot. to Dismiss, ECF No. 30.)

#### A. Claims brought in Heine's Individual Capacity

Streamline and Pinkas argue that Heine does not have standing to assert claims in his individual capacity and that Heine cannot obtain relief in his individual capacity.

Standing requires, among other things, that a plaintiff "assert his own legal rights and interests, without resting the claim on the rights or interests of third parties." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). In other words, Heine must be a "real party in interest," which is defined as "one who has a real interest in the subject matter of the litigation, and not merely an interest in the action itself, *i.e.*, one who is directly benefitted or injured by the outcome of the case." *Shealy v. Campbell*, 485 N.E.2d 701, 702 (Ohio 1985).

Streamline and Pinkas argue that the Stockholders Agreement precludes Heine from bringing suit for direct claims to enforce the Agreement because he no longer owns shares in Streamline. (Streamline's Memo. in Supp. of Mot. to Dismiss, ECF No. 32-1, at p. 9; Stockholders' Agr., ECF No. 1-1, § 24(d).) Defendants also argue that Plaintiff lacks standing to assert derivative claims on behalf of Streamline in his individual capacity.

Plaintiff admits that the Trust, not Heine himself, owns the Streamline shares. (Am. Compl., ¶ 4.) However, Plaintiff maintains that as the representative of the Trust, he can bring claims on the Trust's behalf. Federal Rule of Civil Procedure 17(a)(1)(E) specifically permits trustees of express trusts to sue in their own names. *Id.* ("An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: . . . **(E)** a trustee of an express trust."); *see also Navarro Savings Assoc. v. Lee*, 446 U.S. 458, 462 (1980) ("Federal Rule of Civil Procedure 17(a) now provides that such trustees are real parties in interest for procedural purposes.").

Despite the contentious nature of the parties' positions, it is clear that Randall Heine can bring a claim on behalf of his Trust against the Defendants, as he is the representative of that Trust, and the Trust owns shares in Streamline. He is permitted to bring this suit in his own name on

- 5 -

behalf of the Trust. Therefore, the court hereby denies Defendants' Motions to Dismiss on this issue.

### B. Count I - Breach of Contract

Defendants Streamline and Pinkas argue that Plaintiff's claim for breach of contract must be dismissed because he cannot plausibly establish any damages caused by the alleged breach. Defendant argues:

> the Amended Complaint fails to allege a basis for Heine's claim that Streamline's profits are for the benefit of all shareholders on a pro-rata basis, or that Streamline's board of directors declared and paid, or planned to pay, any dividend or distribution to shareholders as a result of the alleged profit in 2009. Moreover, the Amended Complaint fails to allege any facts regarding the alleged 'series of notes,' that Heine is owed anything under any alleged notes, or that a distribution to shareholders would have occurred in the absence [of] the alleged notes. Further, the Amended Complaint is devoid of allegations related to damage incurred by the Trust. Absent those material allegations, Heine's pleading lacks any plausible basis to assert a claim for damages as a result of Streamline's alleged breach of the Stockholders Agreement because Plaintiff cannot otherwise demonstrate that he, or the Trust, have been damaged.

(Streamline's Memo. in Supp. of Mot. to Dismiss, ECF No. 32-1, at pp. 11-12.)

Plaintiff argues that he has properly pled a breach of contract action, alleging that his Trust suffered damages from Defendants' breach of the Shareholders' Agreement. (Am. Compl., ¶ 75 ("Streamline's breach of the Shareholder Agreement has resulted in its failure to reduce its indebtedness under a series of notes and to make distribution to its shareholders. This breach of the Shareholder Agreement has damaged Heine/Trust because Streamline failed or was unable to repay these notes and otherwise make distributions to its shareholders, including Heine. Streamline and Heine have incurred significant damage and will continue to incur damage as a result of Streamline

- 6 -

and Brantley Capital's breach of the Stockholder Agreement in an amount in excess of $75,000, exclusive of interest costs and attorney fees, to be proven at trial.").) Plaintiff also alleges that "[i]n 2009, Streamline realized a profit of $3.5 million, which should have been for the benefit of all shareholders on a pro-rata basis." (*Id*. ¶ 42.)

Following the standard set forth in *Twombly* and *Iqbal*, it is the opinion of this court that Plaintiff has pled sufficient factual allegations to "raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.

### C. Count II - Breach of Fiduciary Duties under Ohio Law

Count II alleges that Defendants Streamline and Pinkas breached the fiduciary duties of good faith, of good care, of loyalty, and to refrain from self-dealing under Ohio law. Streamline and Pinkas argue that this claim should be dismissed because Delaware law, not Ohio law, applies.

Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941), this court should apply the choice-of-law principles of the forum state, Ohio. Defendant argues that using Ohio choice-of-law principles, the internal affairs doctrine applies and requires plaintiff to bring its claims pursuant to Delaware law. Plaintiff argues otherwise and maintains that Ohio law governs the Trust's claims because of the choice-of-law provision in the Stockholders' Agreement.

Ohio applies the internal affairs doctrine in appropriate cases. *E.g. Bryan v. DiBella*, No. 08AP-418, 2009 WL 638472, *3 (Ohio App. 10 Dist. Mar. 12, 2009). The internal affairs doctrine provides that the law of the state of incorporation governs the internal affairs of a corporation. *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Internal affairs are those "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *Id*.

- 7 -

The fiduciary duties owed by directors of a corporation are internal affairs. *E.g. In re Teleglobe Communications Corp.*, 493 F.3d 345, 386 (3d Cir. 2007) ("Under the internal affairs doctrine, anyone controlling a Delaware corporation is subject to Delaware law on fiduciary obligations to the corporation and other relevant stakeholders."); *In re Concord EFS, Inc.*, No. 02-278Ma, 2004 U.S. Dist. LEXIS 25569, *15 (W.D. Tenn., Mar. 20, 2004) ("Whether corporate fiduciary duties have been breached and whether a derivative suit can be maintained relate to the internal affairs of a corporation."); *In re USACafes, L.P. Litigation*, 600 A.2d 43, 52 (Del. Ch. 1991) ("The wrongs here alleged are not tort or contract claims unconnected with the internal affairs or corporate governance issues that Delaware law is especially concerned with. . . . The wrongs here are alleged breaches of fiduciary duties of the General Partner and of its directors *qua* directors created by Delaware law and of especial concern to it.").

Plaintiff argues that because the parties expressly agreed to apply Ohio law to the interpretation of the Stockholders Agreement, (Stockholder Agr., ¶ 24(i)), Ohio law controls the question of whether or not Defendants violated their fiduciary duties. In other words, Plaintiff argues that the choice-of-law provision in the Stockholder Agreement is an exception to the internal affairs doctrine. This argument is not well-taken.

Various courts have addressed the question of whether the internal affairs doctrine applies when it is in conflict with a choice-of-law provision in the parties' agreement. In the case of *In re PHP Healthcare Corp.*, 128 F.App'x 839, 842 (3d Cir. 2005), the liquidator of the debtor's assets sued the debtor's shareholders and former shareholders "seeking to recover the consideration paid in a series of stock redemption transactions authorized by PHP's Board of Directors." In that case, the court determined that the internal affairs doctrine applied even though a clause in the Stock Purchase Agreement stated that a different state's law applied. The court explained:

> Defendant Robbins argues that Virginia law, not Delaware law,
> governs claims arising from his stock redemption transactions because

- 8 -

> the Stock Purchase Agreement between Robbins and PHP contains a Virginia choice of law provision. The Liquidating Company argues that Delaware law controls because the Stock Purchase Agreement is trumped by the "internal affairs" doctrine, which requires that the laws of the state of incorporation govern "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders." *See Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). . . .
>
> Here, however, the contract at issue and the result of this action may affect indirectly the rights of non-parties to the contract; it is alleged that PHP violated Delaware law either because PHP had no surplus when it redeemed its stock, or, in the alternative, because the redemption impaired PHP's capital. For this reason the redemptions at issue qualify as internal affairs of PHP. . . .
>
> Because PHP is a Delaware corporation and the Liquidating Company's dispute with Robbins falls within the internal affairs doctrine, Delaware law controls.

*Id.* at 842-44. The court finds the reasoning in that case to be persuasive.

The court in *Marcus v. Lincolnshire Management Inc.*, 409 F.Supp.2d 474, 481 (S.D.N.Y. 2006), held similarly. In that case, the subscription agreement that covered the purchase of shares of the common stock of the defendant company, contained a provision that stated that it would be governed by New York state law. Plaintiff made a claim for, among other things, common law dissolution. The court determined that the internal affairs doctrine applied, and thus Delaware law applied because the claim for dissolution is a quintessential internal affair. *Id.*

Further, the court also finds the reasoning of the Delaware Supreme Court in *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005) to be persuasive. The court summarized the purposes of the internal affairs doctrine:

> In *CTS Corp. v. Dynamics Corp. of Am.*, the United States Supreme Court stated that it is "an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares." In CTS, it was also recognized that "[a] State has an interest in promoting stable relationships among parties involved in the

corporations it charters, as well as in ensuring that investors in such corporations have an effective voice in corporate affairs." *Id*. The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation.

The internal affairs doctrine developed on the premise that, in order to prevent corporations from being subjected to inconsistent legal standards, the authority to regulate a corporation's internal affairs should not rest with multiple jurisdictions. It is now well established that only the law of the state of incorporation governs and determines issues relating to a corporation's internal affairs. By providing certainty and predictability, the internal affairs doctrine protects the justified expectations of the parties with interests in the corporation.

The internal affairs doctrine applies to those matters that pertain to the relationships among or between the corporation and its officers, directors, and shareholders. The Restatement (Second) of Conflict of Laws § 301 provides: "application of the local law of the state of incorporation will usually be supported by those choice-of-law factors favoring the need of the interstate and international systems, certainty, predictability and uniformity of result, protection of the justified expectations of the parties and ease in the application of the law to be applied." Restatement (Second) of Conflict of Laws § 301 (1971). Accordingly, the conflicts practice of both state and federal courts has consistently been to apply the law of the state of incorporation to "the entire gamut of internal corporate affairs." The internal affairs doctrine does not apply where the rights of third parties external to the corporation are at issue, e.g., contracts and torts.

The internal affairs doctrine is not, however, only a conflicts of law principle. Pursuant to the Fourteenth Amendment Due Process Clause, directors and officers of corporations "have a significant right ... to know what law will be applied to their actions" and "[s]tockholders ... have a right to know by what standards of accountability they may hold those managing the corporation's business and affairs.". Under the Commerce Clause, a state "has no interest in regulating the internal affairs of foreign corporations." Therefore, this Court has held that an "application of the internal affairs doctrine is mandated by constitutional principles, except in the 'rarest situations,' " *e.g.*, when "the law of the state of incorporation is inconsistent with a national policy on foreign or interstate commerce."

*Id. See also In re Skyport Global Communications, Inc.*, No. 08–36737, Sl. Cop., 2011 WL 111427, *16-17 (Bkrtcy.S.D.Tex. Jan. 13, 2011) (quoting the same as above and "agree[ing] with this analysis.").

Plaintiff relies on the Restatement (Second) of Conflict of Laws ¶ 187 (1971), which states, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." Plaintiff has cited nothing to suggest that this general doctrine from the Restatement should override the specific doctrine of internal affairs that courts use in corporate cases. Relying on *Bagdon v. Bridgestone/Firestone, Inc.,* 916 F.2d 379, 383 (7th Cir. 1990), Plaintiff also argues that "[w]hen an agreement between shareholders 'speak[s] to corporate governance - questions such as how directors are elected, whether demand on directors is necessary before pursuing claims, and the like' - then the choice of law clause contained in such an agreement **must be enforced as written.**" (Pl.'s Opp., ECF No. 34, at p. 21 (emphasis in the original), quoting *Bagdon,* 916 F.2d at 383.) Plaintiff argues that the Stockholders' Agreement in this case speaks to corporate governance issues, such as how the Board of Directors should be elected, what procedures to undertake before engaging in a transaction with an entity with which a shareholder has a financial interest, management agreements, voting rights, and certain rights of employee shareholder, and thus the choice-of-law provision stating that Ohio law applies must control.

In *Bagdon*, the parties had entered into an agreement which governed Bagdon's role as a manager in a store owned by the defendant. The agreement contained a choice-of-law clause stating that Ohio law applied. Thus, when Bagdon sued Bridgestone and alleged that the majority stockholder wrongly competed with the corporation, the court had to determine whether to apply

- 11 -

Ohio law, as elected in the contract, or Delaware law, pursuant to the internal affairs doctrine. The court stated,

> [f]or two reasons, we conclude that Delaware law governs. First, Bagdon has waived any claim to the benefit of Ohio law by not briefing the choice-of-law question issue in either the district court or this court. The internal affairs doctrine points to Delaware; something other than silence is necessary to persuade us to go elsewhere. Second, if the question were before us we would incline to think that the choice-of-law clause governs the validity and effect of the contract and does not affect corporate law on subjects outside that pact.

*Id*. at 383. The court went on to discuss the agreement between Bagdon and Firestone and uses the language that Plaintiff quotes in his Brief in Opposition:

> The agreement between Bagdon and Firestone settles many subjects concerning Bagdon's employment (it contains a no-competition clause, for example) and their relative stakes as investors (it says among many other things that Firestone's holdings shall not be less than 51% and that Bagdon shall have preemptive rights if the firm issues additional stock). It does not speak to corporate governance—questions such as how directors are elected, whether demand on directors is necessary before pursuing claims, and the like. Investors may strike agreements between themselves on many subjects, under many bodies of law, without altering the principle that the law of the state of incorporation regulates internal affairs.

*Id*. Therefore, the court applied the internal affairs doctrine. It also discussed, *in dicta*, the question of whether the internal affairs doctrine could apply if the agreement addressed corporate governance issues, which are considered internal affairs, and contained a choice-of-law provision. A question raised *in dicta* does not convince this court to hold contrary to the caselaw already discussed above. In those cases, the internal affairs doctrine applied even when choice-of-law provisions existed and when those agreements presumably addressed issues of corporate governance.

The court hereby finds that Delaware law applies to the claims for breach of fiduciary duties because Streamline is incorporated in Delaware. The fiduciary duty claims made pursuant to Ohio law are hereby dismissed.

### D. Counts III - VI: the Derivative Claims

#### 1. Direct vs. Derivative Claims

Counts III - VI are for declaratory relief, breach of duties under Delaware law, unjust enrichment, and injunctive relief, respectively. Plaintiff categorizes these claims as direct claims but brings them as derivative claims in the alternative. Defendants argue that the claims are derivative.

The determination as to whether a plaintiff's claims are direct or derivative is governed by the law of the state of incorporation. *Casden v. Burns*, 306 F. App'x 966, 974 (6th Cir. 2009). Under Delaware law, the question of whether a claim may be brought individually or as a derivative claim turns on two questions: (1) who suffered the harm; and (2) who would receive the benefit of any recovery. *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033. (Del. 2004). A direct claim is one in which the shareholder's injury is separate and distinct from any alleged injury to the corporation. *Id.* at 1038-39. If the plaintiff cannot demonstrate that he has suffered an injury that is independent of the injury suffered by the corporation, he may not bring an individual suit. *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 351 (Del. 1988) ("[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation").

Defendants argue that Heine failed to identify an injury that is separate from an injury to Streamline and failed to allege how his injury is different from alleged injuries suffered by other shareholders. Plaintiff erroneously argues in response that Ohio law applies to these issues and that

- 13 -

Ohio law permits Plaintiff to bring these claims as direct actions. Plaintiff does not evidence any intention to argue that the claims could be brought directly under Delaware law. The court finds that the claims brought in Counts III-VI[1] can only be brought as derivative claims under Delaware law.

### 2. Requirements to Bring Derivative Claims

Defendants Streamline and Pinkas argue that Plaintiff has failed to plead derivative claims because Plaintiff did not plead with particularity why making a demand to Streamline's board would have been futile. Plaintiff argues that he has properly pled all of the requirements for a derivative action on behalf of Streamline.

A fundamental principle of corporate law is that directors manage the affairs of the corporation. *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1983) (overruled on other grounds). The authority granted to directors includes the discretion to determine when litigation on behalf of the corporation should proceed. *Zapata Corp. v. Maldanado*, 430 A.2d 779, 784 (Del. 1981). The requirement that shareholders make demand upon the board of directors to bring suit addressing wrongs committed against the corporation is a recognition of this authority. *Aronson*, 473 A.2d at 812 (remanding to the chancery court because the plaintiff had not pled sufficient facts to demonstrate demand futility and survive a motion to dismiss). Rule 23.1 of the Federal Rules of Civil Procedure state that a complaint "with particularity ... any effort by the plaintiff to obtain the desired action from the directors or comparable authority." Similarly, Rule 23.1(a) of the Rules of Court of Chancery of the State of Delaware requires that the complaint "allege with particularity

---

[1] For purposes of clarification, Count III asks for declaratory relief for breach of contract and for breach of fiduciary duties. Declaratory relief pursuant to Count I, the breach of contract claim, can be brought as a direct claim, as discussed above. Declaratory relief for the alleged beach of fiduciary duties, however, must be brought derivatively.

the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the reasons for the plaintiff's failure to obtain the action or for not making the effort." The Delaware Supreme Court in *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000), stated that "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading."

However, a shareholder may bring a derivative suit without making demand on the directors "when it is apparent that a demand would be futile, that the officers are under an influence that sterilizes discretion and could not be proper persons to conduct the litigation." *Zapata*, 430 A.2d at 784 (citing *McKee v. Rogers*, 156 A. 191, 193 (Del. Ch. 1931)). If arguing futility, the shareholder must plead with particularity the reasons why demand would have been futile. *Aronson*, 473 A.2d at 808; *see also Brehm*, 746 A.2d at 254-55 ("Chancery Rule 23.1 requires, in part, that the plaintiff must allege with particularity facts raising a reasonable doubt that the corporate action being questioned was properly the product of business judgment.")

In determining whether a demand would be futile, the court must decide whether "under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814. The "test for futility is 'whether the Board, at the time of the filing of the suit, could have impartially considered and acted upon the demand.'". *Aronson*, 473 A.2d at 809 (quoting *Lewis*, 466 A.2d at 381). Interested directors are those who either appear on both sides of the transaction or expect to derive a personal financial benefit from the transaction. *Id.* at 812. The court in *Aronson* explained that decisions by a board of directors, including decisions regarding the pursuit of litigation, are afforded the protection of the business judgment rule. *Id.* This rule presumes that directors are acting in good faith to do what they believe to be in the best interests of the corporation. *Id.* Because of this protection, a shareholder seeking

to prove that making demand of a board of directors would be futile must establish sufficient justification to rebut this presumption. *Id.* The court concluded that a showing of director interest in the transaction in question coupled with a demonstration by the plaintiff that the transaction was not approved by a majority of the disinterested directors is sufficient to rebut the presumptive protections of the business judgment rule. *Id.* at 812. In such a case, "the inquiry ceases" and "futility of demand has been established by any objective or subjective standard." *Id.* at 815.

Streamline's board of directors consists of five seats of which only four were filled at the time of the approval of the transaction in question. (Am. Compl., ECF No. 29, ¶¶ 24, 30.) Of the four members serving on the board at the time of this transaction, only three participated in the vote. (*Id*. ¶¶ 47, 49-51.) The decision to approve the payments to BMC was decided by a vote of two votes in favor to one vote against with Mr. Pinkas and Mr. Hill casting the affirmative votes. (*Id*. ¶ 51.)

The court concludes that Plaintiff has pled sufficient particularized facts asserting that the board was not independent. Plaintiff alleges that Mr. Pinkas is an interested board member. (*Id*. ¶¶ 43, 46, 51.) In support of this allegation, he asserts that Pinkas, in addition to serving on Streamline's board of directors, is also a controlling shareholder in BMC, the company to which the payments in question were made. (*Id*. ¶ 8.) Under the standard articulated in *Aronson*, Pinkas, as a person on both sides of the transaction who stands to benefit financially from the transaction, cannot be considered an independent disinterested director.

Plaintiff further contends that Mr. Hill is not independent because he "reports to and is controlled by Pinkas." (Am. Compl. ¶ 40.) Plaintiff alleges that Pinkas hired Hill. (*Id*. at ¶ 33.) These conclusory allegations alone are an insufficient basis upon which to conclude that Mr. Hill was an interested party to the transaction. However, given that this transaction was approved by a vote

of 2 to 1, and one of the two votes in favor of the transaction was cast by Mr. Pinkas, who was an interested party, it cannot be said that the transaction was approved by a majority of the disinterested directors. *See Beam v. Stewart*, 845 A.2d 1040, 1046 (Del. 2004) ("If three directors of a six person board are not independent and three directors are independent, there is not a majority of independent directors and demand would be futile."). Having shown director interest in the transaction with BMC and a failure to have the measure approved by a majority of disinterested directors, Plaintiff has pled sufficient facts to demonstrate demand futility. *See Aronson*, 473 A.2d at 812.

Because Plaintiff's pleading sufficiently demonstrated futility, the court hereby denies Defendants' Motion to Dismiss Counts III - VI of the Complaint.

### E. BMC's Motion to Dismiss Count V

BMC argues that Count V of the Amended Complaint for unjust enrichment must be dismissed because Heine and his Trust lack standing to assert the claim. (BMC's Mot. to Dismiss, ECF No. 30-1, at p. 3.) BMC maintains that Plaintiff is not asserting his own legal rights but instead is resting his claim for unjust enrichment on the interests of third parties. (*Id*. at p. 5.) According to BMC, only Streamline would possess a right to make a claim for unjust enrichment because Heine does not own any Streamline shares, as Heine's shares in Streamline were transferred to the Trust in 2002. BMC argues that the Trust is not Heine's successor, so it cannot assert this cause of action derivatively on behalf of Streamline and that Heine has not pled the elements of unjust enrichment as a direct claim. BMC also incorporates Streamline's arguments for dismissing this claim.

The court has already decided that the unjust enrichment claim must be brought derivatively, thus mooting BMC's arguments about why Heine cannot bring a direct unjust enrichment claim. Further, as already decided above, Federal Rule of Civil Procedure 17(a)(1)(E) permits a trustee of

an express trust to sue in his or her own name "without joining the person for whose benefit the actions is brought."

Plaintiff argues that it has properly pled the claims in the Amended Complaint derivatively on behalf of Streamline. The court agrees. (Am. Compl., ¶¶ 98-99 ("Brantley Management has received a benefit from Streamline in the form of a $1,500,000 payment, plus other amounts that may be paid pursuant to the improper approval above, for alleged services that were either not performed, were not necessary, or were excessive, or where the amount paid for exceed the actual value of the services rendered. . . . Brantley Management will be unjustly enriched to the extent that it is allowed to retain these funds by an amount in excess of $75,000 to be proven at trial, exclusive of interest and costs.").) Plaintiff further argues that it has adequately pled the "demand futility" element of derivative actions. As the court determined that Plaintiff properly pled demand futility above, it holds similarly here.

The court hereby denies BMC's Motion to Dismiss Count V of the Amended Complaint (ECF No. 30).

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendants Pinkas's and Streamline's Motions to Dismiss. (ECF Nos. 31, 32.) Count II is hereby dismissed. Counts III-VI may only be brought as derivative claims except inasmuch as Plaintiff is requesting declaratory relief in Count III for breach of the Stockholders' Agreement. The court denies Defendant BMC's Motion to Dismiss Count V of the Complaint. (ECF No. 30.)

The court hereby schedules a telephonic status conference with counsel for the parties in the within case on August 3, 2011, at 4:30 p.m., to discuss Plaintiff's Motion to Disqualify Attorney-Law

Firm for Defendants Streamline Foods, Inc. and Brantley Management Company d/b/a Pinkas Management Company (ECF No. 36). The court shall initiate the conference.

    IT IS SO ORDERED.

                                              /s/ *SOLOMON OLIVER, JR.*
                                              CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT

July 29, 2011